LEONA I., M. AND C. CO. v. O. M. ROBERTS, GOVERNOR.

(Case No. 1627.)

1. BOND — STATUTORY AND COMMON LAW.— A bond was required by the governor of the state of a company which constructed an irrigation ditch, under the provisions of the act of March 10, 1875, entitled "An act to encourage the construction of canals and ditches for navigation and irrigation." It was made conditioned that the company would keep the ditch in proper repair, so that the water would flow freely through its length, and irrigate the land along the ditch for ten years; and it recited that its execution was required by the governor to satisfy him that the company had the ability, and intended to keep the ditch in proper repair for ten years, under the provisions of the act above referred to. The bond was exacted to satisfy the governor of facts as to which under the law he was to have proof, before the company could receive land certificates for constructing the ditch. In a suit by the state to recover upon the bond, held:

(1) The bond was not required by the law.

(2) The bond afforded no proof, in a legal sense, of a compliance or an intention on the part of the company to comply with the law.

(3) The governor was not authorized to procure indemnity for the state in case the company failed to comply with the law, in the manner attempted.

(4) The bond did not afford either satisfactory evidence of facts, required by statute to be ascertained by the governor, or a substitute therefor.

(5) The demand for the execution of the bond was an onerous condition precedent to the enjoyment of a right, and unauthorized.

(6) The bond, being executed *colore officii*, and not having been voluntarily executed, cannot be enforced as a common law bond. Citing authorities, for which see opinion.

(7) The bond, being made under duress and without lawful authority, was void.

APPEAL from Frio. Tried below before the Hon. D. P. Marr

This suit was brought by appellee, as governor of Texas, to recover a penalty of $9,000, on the following instrument:

" THE STATE OF TEXAS,   }
  " *County of Bexar.*   }

"Know all men by these presents, that the Leona Irrigation, Manufacturing and Canal Company, as principal, and H. F. & W. H. Young, Hugo & Schmeltzer and Wm. H. Young, as sureties, are held and firmly bound unto R. B. Hubbard, governor of the state of Texas, and his successors in office, in the sum of nine thousand dollors, good and lawful money of the United States, for the payment of which, well and truly to be made, we jointly and severally obligate and bind ourselves, our heirs and legal representatives: *Conditioned*, that the said Leona Irrigation, Manufacturing and Canal Company shall keep the ditch of said company on Leona river, in Frio county, as described and identified by the report of Henry C. King, Inspector of Canals and Ditches west of the Colorado river, dated December 2d, 1876, for twelve miles and five hundred and sixty-eight feet, fourth class ditch, in proper repair, so that the water will flow freely through in its entire length and irrigate the land along the ditch, *that the flow of water is capable of irrigating, for the term of ten years from the completion of said ditch. This bond being required by the governor to satisfy him that the said Leona Irrigation, Manufacturing and Canal Company have the ability and intend to keep said ditch in full repair and efficiency for the period of ten years under the provisions of the act approved March 10th, 1875, entitled 'An Act to encourage the construction of Canals and Ditches for Navigation and Irrigation purposes.'*

" In testimony whereof, witness our signatures, this the eighth day of December, 1876.

" WM. H. YOUNG,

" President of the Leona Irrigation, Manufacturing and Canal Co.

" H. F. & W. H. YOUNG.

" HUGO & SCHMELTZER.

" WM. H. YOUNG."

The paper was attached to and made a part of plaintiff's petition. In the original petition it was alleged:

1st. That the company was duly incorporated.

2d. That the ditch was constructed under the act of March 10, 1875.

3d. That it was inspected by H. C. King, inspector, etc., and that he made his report, approving the same, according to law.

4th. That the company was entitled, under said act (March 10, 1875), to certificates for seventy-two and one-third sections of land.

5th. That before the issuance of the certificates by the commissioner of the general land office, the company was required by the governor of the state of Texas to enter into and give the bond sued on.

6th. That in accordance with said requirement and the provisions of said act (March 10, 1875), the bond sued on was given.

7th. That the defendant corporation failed and neglected to keep the ditch in repair according to the requirements of the bond.

8th. That by failing and neglecting that duty, the obligors became indebted to the plaintiff in the sum of $9,000.

Defendants answered by general and special exceptions, which were overruled by the court. General denial and special answers, in substance, as follows:

1st. That the company constructed the ditch in good faith, and had the intention and ability to keep the same in repair, and that they did so by the expenditure of large sums of money so long as the state of Texas or any individual could be benefited thereby, and so long as the flow of water in the river was sufficient in volume to enable human skill to secure a flow through the ditch.

. . . 4th. That the defendants had invested large sums of money in the ditch and were most to be benefited by keeping it in repair, and were always ready, able and anxious to do so, if it had been possible to secure sufficient water.

5th. That other ditches were taken out from the river above this one by individuals and chartered companies, with charters junior to that of defendants, which consumed the water and contributed to render this ditch worthless.

6th. That these things were unforeseen by defendants, and occurred through no fault of theirs, and that they are the only persons damaged thereby — in the sum of $15,000.

Verdict in favor of the plaintiff for the sum of $9,000.

*Houston Bros.*, with *L. C. Grothaus*, for appellant, on their proposition that the court should have sustained their demurrer, cited: Orig. Pet. and Bond, Trans., pp. 1–3 and 8–17; Gen'l Laws 1875,

pp. 77–8; Wooters v. Smith, 56 Tex., 206 *et seq.;* Johnson v. Erskine, 9 Tex., 10; Sullivan v. Alexander, 19 Johns., 234; Smith v. Allen, 21 Am. Dec., 33.

That the bond was not a statutory bond, they cited: Act of Aug. 21, 1876, Gen. Laws 1876, p. 254, secs. 5, 6.

That the bond was not a common law bond and was void, they cited: Wooters v. Smith, *supra;* Johnson v. Erskine, *supra;* Holmes v. State, 44 Tex., 633; Hanks v. Horton, 5 Tex., 104, 105; Benedict v. Bray, 2 Cal., 251; 1 Wait's Ac. & Def., p. 683; Thompson v. Lockwood, 15 Johns., 256; Lansing v. Fleet, 2 Johns. Cas., 2; Smith v. Allen, 21 Am. Dec., 33; Sullivan v. Alexander, 19 Johns., 234.

"An officer in the discharge of his official duties who denies a legal right, even though the same be but a right given by statute, unless the party seeking the same will do more than the law requires, is a coercer and oppressor, through whose contracts no one ought to be permitted to claim rights." Justice Stayton in Wooters v. Smith, *supra.*

That the act of March 10, 1875, constituted the contract between the state and the defendant corporation, and could not be changed or made more onerous, either by the governor or the legislature, so as to affect the rights acquired thereunder by the defendant corporation: Wade on Retroactive Laws, pp. 53 and 106; Const., sec. 16, art. 1.

That the bond was not a voluntary bond, and the penalty, $9,000, was an arbitrary amount fixed by the governor, and cannot be construed as agreed or stipulated damages: Gen. Laws 1875, pp. 77–8; Orig. Pet. and Bond, *supra.* .

*Templeton,* Attorney-General, for the state, filed a printed argument.

*John D. Morrison* and *L. D. Murphy,* also for appellee, on their proposition that the bond, though not statutory, was good, cited: Thompson v. Buckhannon, 2 J. J. Marsh., 416; United States v. Bradley, 10 Pet., 361; Parker v. The State, 4 Ga., 329; Archer v. Hart, 5 Fla., 234; Alexander v. Silbernagel, 27 La., 557; Wolf v. McClure, 79 Ill., 564; Clewsen v. Shaw, 30 Am. Dec., 338; Notes to Simpson v. Harris, 14 Am. Dec., 103, 104 and 105; United States v. Tingey, 5 Pet., 127.

WILLIE, CHIEF JUSTICE.— The important question in this case arises upon the action of the court below overruling the demurrer to appellee's petition.

Whether this ruling was correct or not depends upon whether the bond, which was the foundation of this suit, was a void or a valid instrument.

It was alleged to have been taken under an act of the legislature approved March 10, 1875, entitled "An act to encourage the construction of canals and ditches for navigation and irrigation."

The third section of that act provides substantially as follows: That whenever any corporation or company shall have constructed, as required in the act, a section of three miles or more of canal, application may be made to the governor to have the same examined, whose duty it shall be to direct the state engineer, or to appoint some competent person, to examine and classify the same, and report under oath thereon. If the governor shall be satisfied that the work has been done in compliance with the act, he shall certify the same to the commissioner of the general land office. Whereupon the commissioner shall issue to the company or corporation the number of land certificates it may be entitled to by the classification of the canal. The section of the act from which the above is taken contains a proviso to this effect: that such company or corporation, before they shall be entitled to receive any benefit from the state under the act, shall satisfy the governor by such proof as he may require that they have constructed such canal or ditch in good faith, in order to carry out and accomplish the objects of the act, and that said corporation or company have the ability and do intend to keep said canal or ditch in full repair and efficiency, for the purposes of the act, for the period of ten years after it is fully completed; and if the said company do not by such proofs as the governor may require, so satisfy him, they shall not receive any benefit under the act.

It appears from the petition that the canal had been constructed and inspected in accordance with the act for the distance of twelve miles and five hundred and thirty-eight feet, and that upon the report of the inspector to that effect, certificates for seventy-two and a third sections of land were issued and delivered to the appellant company. The petition then alleges that before the issuance of said certificates the company was required by the governor to give bond in the sum of $9,000, under the provisions of the proviso above set out, conditioned that the company would keep the ditch in proper repair, so that the water would flow freely through its entire length, and irrigate the land along the ditch, that the flow of water was capable of irrigating, for the term of ten years from the completion of said ditch. The bond also recites that it was required by the

governor to satisfy him that the company had the ability and intended to keep the ditch in full repair and efficiency for the period of ten years under the provisions of the said act.

It is clear from these allegations, and from the instrument itself made part of the petition, that the bond was required as a prerequisite to the issuance of the certificates to the company. It was given to satisfy the governor of facts as to which he was to have proof before the company obtained such a benefit, and was required by him as such proof or in lieu of it. To *require*, as used in the statute and the petition, is to *demand* or *exact;* which words imply the use of the power that one party has over another to compel the latter to do something which he would not do but for the ability of the former to enforce his demands. The proof mentioned in the act the governor has the power imperatively to demand, before allowing the certificates to issue; and as in this instance he did demand in lieu of the proof, or as a substitute for it, the execution of the bond, he exacted the performance of that act as a condition precedent without which the land grants could not be made to the company.

The bond sued on is not in terms prescribed by the statute, nor was it made the duty of the executive to take an obligation of any character from the company constructing the ditch. It is contended, however, that the governor had authority to demand it as proof satisfactory to himself that the company had the ability, and intended to keep the canal in repair for ten years. It may be admitted that the governor is allowed by the act unlimited discretion as to the proof he may require, but still it must be proof in the proper sense of that term — this, and nothing more. Proof or satisfactory evidence, in the legal sense of the term, is that which ordinarily convinces and satisfies the mind of the existence or non-existence of a fact. It is ordinarily applied to present or past facts, as no one can testify positively what will happen in the future. However, the law sometimes requires an oath and a bond to secure the faithful performance of official duties. The former of these might, perhaps, be construed as sufficient statutory proof that these duties would be properly performed; the latter is not taken for that purpose, but to indemnify against loss arising from their non-performance.

Conceding to the governor the most unlimited discretion as to what manner of proof he should exact as to the ability and intention of the company to keep the ditch in repair, he was not authorized to procure indemnity for the state in case this duty was not

performed by the company. The facts about which he was to be satisfied were of the present time, the existing ability and intentions of the company, and not what would be their ability in the future, or their conduct in reference to the canal already constructed.

These facts were not necessarily proved by the execution of the bond. The company may have had neither ability nor intention to keep the canal in repair, and yet have been able and willing to give the bond. On the other hand, it might, at the date of the bond, have had the greatest ability and the best of intentions towards repairing the canal, and yet, before the expiration of ten years, have become financially bankrupt and unable to perform this duty. If the bond satisfied the executive as to the existence of the proper facts at the date of its execution, it also went further and furnished the state indemnity in case he was mistaken. This he had no right to require; it was something for which the statute made no provision. It relieved the governor from doing the very thing which the law said he should do, viz.: obtain satisfactory evidence of certain facts; and substituted in lieu of it a bond to pay so much money if certain other facts did not occur in the future.

It is an onerous condition to require the execution of a bond as a condition precedent to the enjoyment of a benefit conferred by statute. If a bond is to be given in such cases the statute never fails to require it in terms or by necessary intendment, unless where it may be demanded under some law already in existence.

The legislature of 1876, seeing that no bond had been required in the act of 1875, above cited, supplied the omission by requiring one to be given and filed in the general land office before the certificates could be issued. It retained the same requirement as to proof to be furnished to the governor as the previous statute contained. Thus the new statute required proof of ability and intention, and also a bond of indemnity in case the canals constructed under it were not kept in repair. This furnished legislative construction in accordance with our own views of the provision of the third section of the act of 1875. The present bond was taken after the act of 1876 went into effect, but is governed by the provisions of the act of 1875. The amount for which it was given was evidently reached by estimating the certificates at the value placed upon them by the act of 1876. But that act was not binding upon the governor in taking the present bond. If he could exact one amount of bond he could another, and thus deprive the company of all benefit under the act, no matter what proof they might furnish of their ability and intent to keep the canal in proper repair.

Our conclusion is that the governor was not authorized to require a bond of the appellant company, and hence, that the one upon which this suit is based cannot be sustained as a statutory obligation.

It necessarily follows that the instrument cannot be sustained as one purporting to be given under a statute, but containing conditions more onerous than those prescribed by the statute itself. Such obligations have been upheld in many courts to the extent of the statutory conditions, though declared void as to those not prescribed by the legislature.

But here no bond whatever was required by the act of 1875 and that question is removed from the case.

If the present bond can be sustained it must be as a common law obligation, and to be valid as such it must have been voluntarily executed. "The general rule is that a bond, whether required by statute or not, is good at common law if entered into voluntarily, and for a valid consideration, and if not repugnant to the letter or policy of the law." Thompson v. Buckhannon, 2 J. J. Marsh., 416. All persons of proper age and discretion may make such contracts, and they will be binding although one of the parties was the superior of the other in authority, provided they stood upon equal terms in making the contract. But if the bond is exacted *colore officii*, or as the condition to some act or proceeding to which the party would be entitled without giving the bond, it will be void for duress. Germond v. People, 1 Hill (N. Y.), 343; Perry v. Hensley, 14 B. Mon., 474; Ancoin v. Guillot, 10 La. Ann., 124; United States v. Tingey, 5 Pet., 115; United States v. Bradley, 10 Pet., 361.

Such is the result of all the decisions bearing upon this question, and the principle derived from them is decisive of this appeal. Eichoff v. Tidball, 61 Tex., 421; Wooters v. Smith, 56 Tex., 199; Dignan v. Shields, 51 Tex., 322; Alexander v. Silbernagel, 27 La. Ann., 557; Harris v. Simpson, 4 Litt., 165; Churchill v. Perkins, 5 Mass., 541; Hawes v. Marchant, 1 Curt., 140, and the authorities already cited.

The appellant company became entitled to the land certificates upon the performance of conditions into which the execution of a bond did not enter. Under color of office, and as a necessary prerequisite to their securing the certificates, they were required by the governor to execute the bond we have been considering. The instrument was made under duress and without lawful authority, and was void, as appears from the face of the petition, and the demurrer should have been sustained. Had the demurrer been sustained below the plaintiff would have been allowed to amend his

pleadings so as to allege, if possible, that the bond was not required as a prerequisite to the issuance of the certificates. The appellee is entitled to the same privilege upon our decision that the demurrer should have been sustained. For the purpose, therefore, of allowing the appellee to so amend his pleadings, if he can do so consistently with facts, as to allege that the bond was not required as a condition precedent to the delivery of the certificates, but that it was voluntarily executed and tendered by the appellant company, the judgment will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 9, 1884.]