THE MARTIN-BROWN COMPANY v. SIEBE & MARCH ET AL.

No. 612.

1. **Mortgage to Secure Preferred Creditors.**—See instrument held to be a mortgage to secure debts preferred in the order named in the instrument, and not to contravene our statutory assignment law.

2. **Common Law Assignment.**—If the instrument should be conceded to be a common law assignment, it could not be held to be a general assignment, because it does not appear that it was intended to convey all the property of the debtors subject to execution; neither was it made for the benefit of all the creditors. Such a partial common law assignment is not embraced within the prohibitions of our assignment law.

3. **Right of Insolvent Debtors to Prefer Creditors.**—Though insolvent, Siebe & March had the legal right to prefer particular creditors by the character of instrument employed.

4. **Same—Order of Preference.**—The fact that the original intention of Siebe & March to place appellant's debt third in order of payment was changed through the advice of counsel and placed fourth, did not render the conveyance void; and the facts shown did not authorize the order of preference as fixed by the conveyance to be disturbed by the court.

5. **Attorney Fees as Part of Preferred Debt.**—The attorney fees by lawful stipulation were made a part and parcel of the debts secured, and the contingencies upon which they became a part of the demands having occurred, it was proper to award them.

APPEAL from Navarro. Tried below before Hon. RUFUS HARDY.

*Stanley, Spoonts & Meek*, for appellant.—1. An assignment is a transfer by a debtor, without compulsion of law, of some or all of his property

to an assignee or assignees, in trust, to apply the same or the proceeds thereof to the payment of some or all of his debts, and to return the surplus to the debtor. Burr. on Ass., sec. 2; Bump on Fraud. Con., 333, 334; Mississippi Mills v. Richmond, 11 S. W. Rep., 960; Bartlett v. Teagh, 1 McCreary, 176, 178; Wiener v. Davis, 18 Pa. St., 333; The State v. Benoist, 37 Mo., 500.

2. A mortgage of personal property is a conditional sale of it as security for the payment of a debt or the performance of some other obligation. The condition is that the sale shall be void upon the performance of the condition named. Jones on Chat. Mort., sec. 1; 4 Kent Com., 133; 1 Hill. on Mort., 371; Sampson v. Williamson, 6 Texas, 113; Astugueville v. Loustenau, 61 Texas, 233.

3. If the object and purpose of a conveyance be to create a fund out of which to immediately pay debts, whether due or not, it is an assignment. Hart v. Blum, 76 Texas, 113; Burr. on Ass., sec. 8, note 7; Hoffman v. Mackall, 5 Ohio St., 124; Mississippi Mills v. Richmond, 11 S. W. Rep., 960; Ins. Co. v. Foster, 58 Ala., 502; Turner v. Watkins, 31 Ark., 437; The State v. Depuy, 11 S. W. Rep., 964; White v. Cotzhauzen, 129 U. S., 329; Fouke v. Fleming, 13 Ind., 392; 3 Ind., 11.

4. Where it is the intention and purpose of the grantors to divest themselves of all their property by conveying it to a trustee for the benefit of creditors, retaining only an interest in whatever surplus shall remain, the conveyance is an assignment, and if the grantors are at the time insolvent, and the debts provided to be paid exceed in amount the value of the property, the reservation of the impossible surplus can not have the effect to change the legal operation of the instrument from an assignment to a mortgage. Bump on Fraud. Con., 333, 334; Burr. on Ass., sec. 2; Hart v. Blum, 76 Texas, 113; Hoffman v. Mackall, 5 Ohio St., 124; The State v. Benoist, 37 Mo., 500; Green v. Frieber, 3 Md., 11; Fouke v. Fleming, 13 Md., 392.

5. Under the construction placed upon our assignment law by our courts, an insolvent may in good faith prefer creditors in any manner except by assignment; and hence the only effect of the prohibition against preferences therein is to take away the right of an insolvent to make a common law assignment with preferences; and when such assignment is attempted, if the bulk of the property be assigned with preferences, the court will construe it to be a general assignment, and defeat the attempted preference. Burr. on Ass., sec. 122; Foreman v. Burnett, 18 S. W. Rep., 756; Massey v. Noyes, 26 Vt., 462; United States v. Hooe, 3 Cranch, 93; Mississippi Mills v. Richmond, 11 S. W. Rep., 960.

*Crawford & Crawford, R. S. Neblett,* and *Barry & Etheridge,* for appellees J. R. Sandidge, John V. Farwell Company, and City National Bank of Corsicana.—1. The conveyance from Siebe & March to Chesnutt, set

forth by appellant, did not pass the title to Chesnutt, but only created a lien to secure certain debts which could be enforced through foreclosure proceedings or by sale under the power conferred by the instrument, and it is not an assignment, but a mortgage. Hudson v. M. & E. Co., 79 Texas, 401; Johnson v. Robinson, 68 Texas, 399; Watterman v. Silberberg, 67 Texas, 100; Jackson v. Harby, 65 Texas, 710; Stiles v. Hill, 62 Texas, 430; La Belle v. Tidball, 59 Texas, 292.

2. The conveyance in question was a mortgage, whether Siebe & March were or were not solvent. Hudson v. M. & E. Co., 79 Texas, 401.

3. The attorney fees complained of were by lawful stipulation made a part and parcel of the debts, and the contingencies upon which they became a part of the demands having occurred, it was proper for the court to award them.

FINLEY, ASSOCIATE JUSTICE.—A. K. Siebe and J. H. March, on May 6, 1892, were merchants doing business as partners, in firm name of Siebe & March, at Corsicana, Navarro County, Texas. Their entire assets consisted of a stock of goods worth about $16,000, and about $9000 in notes and accounts worth about $400, all partnership property; they had no separate property except homestead. They owed about $28,000, and were insolvent. On that day they conveyed all their property, except the notes and accounts, to W. A. Chesnutt, in trust, to be sold at once, and the proceeds to be applied, first, to the expenses of the trust; second, to the payment of certain creditors with preferences, in the order named; the surplus, if any, to be returned to the grantors.

The conveyance is in the following language:

"*State of Texas, County of Navarro.*—Whereas, we, A. K. Siebe and J. H. March, citizens of the State of Texas, residing in the county of Navarro, and doing business as partners under the firm name of Siebe & March, are justly indebted to the following named persons, corporations, and firms, in the amounts herein after stated, to-wit:

" 1. To the City National Bank of Corsicana in the sum of $6000, evidenced by note dated April 28, 1892, due four months after date, without grace, and bearing interest at the rate of 10 per cent per annum, and providing for the payment of 10 per cent attorney fees. This note is endorsed, for our accommodation, by J. R. Sandige.

" 2. To J. R. Sandige, of Tarrant County, Texas, in the sum of $5900, besides interest. This debt is evidenced by our note dated March 31, 1892, due one day after date, and bears interest at the rate of 8 per cent per annum, and also provides for 10 per cent attorney fees.

" 3. To John V. Farwell Company, of Chicago, by open account for merchandise, in the sum of $609.49.

" 4. To Martin-Brown Company, of Tarrant County, Texas, in the sum of $11,500, besides interest. Ten thousand dollars of this amount

is evidenced by our notes, and $1500 of this amount is evidenced by open account for merchandise.  The dates and maturities of the notes to Martin-Brown Company are not known to us; but this deed of trust and mortgage is intended to secure the debts herein before described, and we expressly stipulate with the trustee herein after named that no misdescription of debt, maturity, date, or actual amount of any debt due by us to the parties herein before named shall in any wise affect this mortgage; it being the true intent of this paper to secure the payment of these debts, and also to protect and hold harmless J. R. Sandige against his endorsement for us on our debt to the City National Bank of Corsicana, herein before described.

" Now therefore, we, A. K. Siebe and J. H. March, partners under the firm name of Siebe & March, for and in consideration of the sum of $1 to us in hand paid by W. A. Chesnutt, of the county of Navarro, State of Texas, and for the further considerations herein after stated, do by these presents transfer, assign, and deliver to said W. A. Chesnutt, trustee, our entire stock of goods, wares, and merchandise, clothing, boots, shoes, hats, caps, furnishing goods, cloaks, and all merchandise of every character or kind now belonging to us and located and situated in our store house in the town of Corsicana, in the building now occupied by us, on the corner of Beaton Street and Fifth Avenue, said store house being commonly known as number 200 Beaton Street, and the store of Siebe & March.  Also all of our stock, fixtures, and furniture, as well as safes, desks, chairs, and in fact everything within the line of merchandise, furniture, or fixtures in and about said store belonging to us.

" The said W. A. Chesnutt shall take immediate possession of all the property herein before described and herein conveyed to him, and shall make an inventory of the same, and shall sell said property or so much thereof as may be necessary to pay off and discharge the indebtedness herein before set out and described, and the costs and expenses incident to the execution of this trust, as speedily as possible, either at public or private sale, as to said trustee shall seem best, and for cash only; and out of the proceeds of such sale shall pay, first, the cost and expense incident to the execution of this trust, and then he shall pay off and discharge in full the debts herein after mentioned, and in the order in which they are mentioned; that is to say, said trustee shall pay, first, our debt due to the City National Bank of Corsicana; second, our debt due to J. R. Sandige; third, our debt due to John V. Farwell Company; fourth, our debt due to Martin-Brown Company.

"And after these debts herein before described have been paid in full, this instrument shall become null and void, and our trustee shall return and deliver to us all of said property remaining unsold, or all money arising from such sale remaining on hand, if any, after the above men-

tioned debts and the cost and expenses incident to the execution of this.
trust have been paid.

"Witness our hands, this 6th day of May, 1892.

"SIEBE & MARCH,

"A. K. SIEBE,

"J. H. MARCH."

2. Siebe & March owed some $3000 to other persons, not mentioned
in the conveyance. The debts mentioned in the conveyance were ad-
mitted to be just demands against Siebe & March in the amounts therein
named; and it was their intention to secure the payment of those debts.
in executing the instrument.

3. It was the original intention of Siebe & March to place Martin-
Brown Company's debt third in order of payment; but they were advised
by the attorney employed to counsel them and prepare the deed of trust,
that he represented John V. Farwell Company, and that they must be se-
cured and have precedence over Martin-Brown Company; and further,
that by so placing Martin-Brown Company it would make the stock go
further in paying their debts, as Martin-Brown Company would be forced
to buy the stock or get nothing on their debt. This advice secured the·
John V. Farwell Company debt of $609.49 to be given preference over
the debt of Martin-Brown Company.

4. The Sandige note for $5900 was executed for an indebtedness to B.
C. Evans Company which had been purchased by Sandige. At the time
of the purchase of this claim by Sandige it was due, and at that time there·
was existing an agreement between B. C. Evans Company and Martin-·
Brown Company that they would prorate their losses upon common debt-·
ors. Sandige was a director in the B. C. Evans Company, but had no·
actual knowledge of this agreement, and the claim was sold to him for a.
valuable consideration, without any understanding that he was to prorate·
collections upon it with Martin-Brown Company. It was not alleged or·
shown that B. C. Evans Company was insolvent.

Appellant filed its suit in the District Court against Siebe & March and
the trustee and preferred creditors, setting up the facts, and asking the·
court to construe said conveyance; and if a general assignment, that the
trustee be required to qualify under the statute and administer the trust.
for the benefit of all creditors; and if a mortgage, to foreclose appellant's.
lien and to cancel the preferences, on the ground that they were fraudu-·
lent, and made to hinder, delay, and defraud appellant, and to force it to·
buy in the stock of goods at more than its value, by forcing or threatening·
to force a sale of said property at a sacrifice, and to compel appellant to
assume and pay off preferred claims in order to prevent the sacrifice, etc.;
and asked that the trustee be enjoined from transferring the property.

The court on a hearing granted the injunction; required the trustee to
give a bond to have the proceeds subject to the final judgment of the.

court; afterward required him to pay the money into court, less his charges. On final trial the court construed the conveyance to be a mortgage, sustained the preferences, foreclosed the several liens, and ordered the money paid out as provided in the trust deed, with interest and attorney fees. Appellants procured a restraining order, gave a restraining bond and appeal bond, and bring the case here for review.

*Conclusions of Law.*—The main questions involved in this case have been expressly passed upon by our Supreme Court, and we deem it unnecessary to further discuss them; therefore, we merely file conclusions in the case.

1. The conveyance made by Siebe & March is a mortgage, intended to secure the payment of the debts therein set out, with preference in the order in which they are named, and does not contravene our statutory assignment law. Hudson v. M. & E. Co., 79 Texas, 401; Watterman v. Silberberg, 67 Texas, 100; Jackson v. Harby, 65 Texas, 710; Stiles v. Hill, 62 Texas, 430; La Belle v. Tidball, 59 Texas, 292.

2. If the instrument should be conceded to be a common law assignment, it could not be held to be a general assignment, for the reason that it does not appear that it was the intention to convey all the property of the debtors subject to execution; neither was the conveyance made for the benefit of all the creditors. Such a partial common law assignment is not embraced within the prohibitions of our assignment law. Johnson v. Robinson, 68 Texas, 399.

3. Siebe & March have the legal right to prefer particular creditors by the character of conveyance which was employed by them, though they were insolvent.

4. The fact that the original intention of Siebe & March to place the Martin-Brown Company debt third in order of payment was changed through the advice of their counsel, and placed fourth in order of payment, did not render the conveyance void; and the facts shown did not authorize the preference to Farwell Company, as fixed in the conveyance, to be set aside by the court.

5. Under the pleadings and evidence, the preference given to J. R. Sandige in the mortgage should not have been disturbed by the court. If B. C. Evans Company had failed to carry out their general contract to prorate with Martin-Brown Company, then Martin-Brown Company had a cause of action against them which could be enforced in an independent proceeding, and that collateral issue was properly excluded from the trial of this cause.

6. The attorney fees complained of were by lawful stipulation made a part and parcel of the debts, and the contingencies upon which they became a part of the demands having occurred, it was proper for the court to award them.

We find no errors committed upon the trial which authorize a reversal of the judgment. It is therefore ordered, that the judgment be affirmed; that the order restraining the clerk from paying over the money in his hands which was decreed to be paid to appellees J. R. Sandige and John V. Farwell Company, be and the same is hereby vacated and dissolved; and that the said appellees, J. R. Sandige and John V. Farwell Company, have and recover of appellant and its sureties on its restraining bond 6 per cent per annum interest upon the amounts respectively withheld from them under said restraining order, from the date of its entry, as damages. Eichoff v. Tidball, 61 Texas, 421.

*Restraining order dissolved, and affirmed with damages.*

Delivered January 3, 1894.

Motion for rehearing overruled February 14, 1894.